UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Pamela L. Farrell,

                        Plaintiff,

        v.

Nancy A. Berryhill,

                        Defendant.

**Decision and Order**

16-CV-509 HBS
(Consent)

## I.   INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 26), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 31, 32.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II.   DISCUSSION

The ultimate issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

For purposes of Social Security disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant

work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff argues that the Administrative Law Judge ("ALJ") who rendered an unfavorable decision improperly assessed the residual functional capacity ("RFC") based on a lay interpretation of raw medical findings. According to plaintiff, there was only one assessment in the record of how her seizure disorder would affect her ability to work. That assessment came from the consultative examining physician, Dr. Dave, in 2009. The ALJ gave Dr. Dave's opinions little weight regarding plaintiff's pulmonary condition but did not mention the opinions regarding seizures. Plaintiff infers that the ALJ rejected Dr. Dave's report in its entirety, which would mean that he proceeded with his own lay interpretation of medical findings. Plaintiff also takes issue with the rejection of Dr. Dave's opinion about pulmonary disorder as inconsistent with other records. Plaintiff argues that she never had normal pulmonary function tests. The Commissioner responds that the RFC assessment does incorporate Dr. Dave's opinions even if it does not copy them word for word. The Court agrees. The ALJ limited plaintiff to sedentary work. "Sedentary work involves lifting no more than 10

3

pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The regulatory definition of sedentary work thus automatically includes "Dr. Dave's opinion that Plaintiff should not climb ladders, work at heights, or with heavy sharp dangerous equipment and machinery due to her seizures." (Dkt. No. 31-1 at 21.) *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.") (citation omitted). The ALJ also had discretion to give weight to those parts of the record indicating that medication, while not eliminating plaintiff's seizures entirely, kept them mostly under control. *Cf. Campbell v. Astrue*, 465 F. App'x 4, 6 (2d Cir. 2012) (summary order) (no disability based on seizures where prescribed medication controlled symptoms); *Castillo v. Barnhart*, No. 01 CIV.9632 DLC, 2003 WL 21921269, at *11 (S.D.N.Y. Aug. 11, 2003) ("Finally, there is no evidence that Castillo continued to experience seizures after [treating physician Dr.] Rivas doubled his Dilantin dosage on May 3, 2000."). As for pulmonary function, the Commissioner is correct to note that, as of November 17, 2009, one of plaintiff's treating physicians saw "no current reason for disability as of now" and thus declined to fill out a disability form. (Dkt. No. 26-7 at 174.) Between that time and the expiration of plaintiff's date last insured of December 31, 2011, her treatment records showed signs of pulmonary limitations but nothing of a disabling nature. (*See, e.g., id.* at 283 ("A 45-year-old female with a history of bronchial asthma reports today for a follow-up evaluation. At this time I believe she is stable."). The ALJ's RFC assessment took plaintiff's pulmonary

4

function into account by requiring that plaintiff avoid humidity, fumes, gases, dusts, and odors that might aggravate her chronic asthma and other limitations. (Dkt. No. 26-9 at 24.) The ALJ's RFC assessment thus was supported by substantial evidence.

Finally, plaintiff argues that the ALJ failed to obtain an RFC assessment from a treating source. "Absent a reasonable explanation for the failure to obtain an RFC assessment from any treating source, the Court cannot conclude [that] the ALJ fulfilled [his] affirmative duty to develop the record." (Dkt. No. 31-1 at 25.) As noted above, however, the record does contain multiple clinical notes indicating that plaintiff had stable pulmonary function. The record also contains an objective pulmonary function test from September 8, 2011, a few months before plaintiff's last date insured. (Dkt. No. 26-14 at 208.) One of plaintiff's treating physicians ordered the test. The physician interpreting the test results concluded that plaintiff had only a mild degree of small airway disease. The physician concluded that the decrease in plaintiff's maximum voluntary ventilation might have been neuromuscular in nature but might have been related to plaintiff's obesity. Plaintiff had mild emphysema and moderate reduction in her diffusion capacity; "[h]owever, corrected for alveolar volume [the diffusion capacity] is within normal limits." (*Id.*) Lay interpretations and further contact with treating sources were not necessary given these test results. That a physician interpreted the raw test results in the report distinguishes this case from cases in which an ALJ had only raw data from spirometry or other tests and applied the word "normal" himself. *See, e.g., Wilson v. Colvin*, 107 F. Supp. 3d 387, 406 (S.D.N.Y. 2015) ("It is not the ALJ's role (nor the Court's, for that matter) to determine which predicted normal value from the variety of available reference values is correct or how the spirometry results should be interpreted.") (citations omitted).

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 32) and denies plaintiff's cross-motion (Dkt. No. 31).

The Clerk of the Court is directed to close the case.

SO ORDERED.

_/s Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: September 24, 2018